In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2748

JANE DOE NO. 1, *et al.*,

*Plaintiffs-Appellees,*

*v.*

TODD ROKITA, ATTORNEY GENERAL OF INDIANA, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-03247-RLY-MJD — **Richard L. Young**, *Judge.*

SUBMITTED NOVEMBER 21, 2022 — DECIDED NOVEMBER 28, 2022

Before EASTERBROOK, BRENNAN, and SCUDDER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Indiana requires abortion providers to dispose of fetal remains by either burial or cremation. Ind. Code §§ 16-34-3-4(a), 16-41-16-4(d), 16-41-16-5. This mandate applies only to providers; women may choose to take custody of the remains and dispose of them as they please. Ind. Code §16-34-3-2. The Supreme Court sustained this regimen against a contention that it violates the Equal

Protection Clause of the Fourteenth Amendment. *Box v. Planned Parenthood of Indiana and Kentucky, Inc.*, 139 S. Ct. 1780 (2019). Nonetheless, in this suit the district court held that it violates the First Amendment (applied to the states by the Fourteenth) and enjoined its operation. 2022 WL 5237133 (S.D. Ind. Sept. 26, 2022). The state has appealed and seeks a stay. We find the outcome controlled by precedent. Because the papers the parties have filed cover the merits, we dispense with further briefing and reverse summarily.

Before addressing the merits, we remark on a problem with the remedy. There are four plaintiffs. Two women who had abortions object to the cremation or burial of the fetal remains, which they contend implies the personhood of a pre-viability fetus. Two physicians do not want to tell patients about their statutory options. The case has not been certified as a class action. The district court could have provided full relief to these four plaintiffs by enjoining the application of the statute to them. But instead it barred multiple state officials from applying these laws to *anyone*. 2022 U.S. Dist. LEXIS 185015 (S.D. Ind. Sept. 26, 2022).

Before enactment of these statutes, it had been common for medical providers to place fetal remains in the garbage ("medical waste"). The Supreme Court concluded in *Box* that the state is entitled to end that practice. The district court's needlessly broad injunction treats the statute as invalid across the board (that is, on its face rather than as applied), which effectively countermands the Supreme Court's decision for the entire population of Indiana. This offends the principle that relief should be no greater than necessary to protect the rights of the prevailing litigants. See, e.g., *Ayotte v. Planned*

*Parenthood of Northern New England*, 546 U.S. 320, 328–30 (2006); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

Instead of remanding with instructions to tailor the relief to the violation, we reverse outright—because there is no violation. Statutes that require people to disobey sincerely held religious beliefs can pose difficult analytical challenges. See, e.g., *Fulton v. Philadelphia*, 141 S. Ct. 1868 (2021); *Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367 (2020). But Indiana does not require any woman who has obtained an abortion to violate any belief, religious or secular. The cremate-or-bury directive applies only to hospitals and clinics.

What's more, neither of the two plaintiffs who has had an abortion contends that a third party's cremation or burial of fetal remains would cause her to violate any religious principle indirectly. What these two plaintiffs contend is that cremation or burial implies a view—the personhood of an unborn fetus—that they do not hold. They maintain that only human beings are cremated or buried. This is questionable. Dogs, cats, and other pets may be cremated or buried, sometimes as a result of legal requirements not to put animals' bodies in the garbage. See, e.g., Ala. Code §3-1-28; Ga. Code §4-5-5; Iowa Code §167.18(1); Kan. Stat. §47-1219; Mich. Comp. Laws §287.671(2); Mo. Stat. §269.020; 3 Pa. Stat. §2352(a)(4); Utah Code §4-31-102(1); Wis. Stat. §95.50; Wyo. Stat. §35-10-104. Indiana's statute about fetal remains therefore need not imply anything about the appropriate characterization of a fetus. At all events, a moral objection to one potential implication of the way medical providers handle fetal remains is some distance from a contention that the state compels any woman to violate her own religious tenets.

If the statute reflects anyone's view about fetal person-hood, it is the view of the State of Indiana. Yet units of government are entitled to have, express, and act on, their own views about contestable subjects. See, e.g., *Pleasant Grove v. Summum*, 555 U.S. 460 (2009); *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015). See also *Bowen v. Roy*, 476 U.S. 693 (1986) (private party's religious objection to Social Security numbers does not require the government to change its record-keeping system). Whether or not the Supreme Court continues to adhere to *Employment Division v. Smith*, 494 U.S. 872 (1990), which holds that laws neutral with respect to religion may be enforced despite their effects on religious exercise, there is no problem with application of a law that leaves people free to put their own religious beliefs into practice. Nor does Indiana require any woman to speak or engage in expressive conduct.

As for the requirement that physicians and other providers tell patients about the statutory options: no one contends that the required notice is false or misleading. *Planned Parenthood of Southeast Pennsylvania v. Casey*, 505 U.S. 833, 882 (1992), is among many decisions holding that states may require medical providers to give truthful notices. Plaintiffs contend that, because *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), overruled *Casey*, the state's authority to require medical providers to provide information has evaporated, so that all such requirements violate the First Amendment unless the state shows a compelling need.

We do not see any such implication in *Dobbs*, which did not discuss that aspect of *Casey*. What has been overruled is *Casey*'s holding that states may not substantially burden a woman's ability to obtain an abortion before a fetus's

viability. The norm that units of government may require physicians (and other professionals) to provide accurate information to their clients long predates *Casey* and has not been disturbed since. Physicians must tell patients about drugs' side effects and provide information that enables informed consent to risky procedures such as surgery. Nothing in *Dobbs*, or any other post-*Casey* decision, implies that similar notice requirements violate the Constitution.

*National Institute of Family and Life Associates v. Becerra*, 138 S. Ct. 2361 (2018), which the district court cited, holds that physicians' speech is not exempt from analysis under the First Amendment and that a state may not enforce requirements disconnected from medical care. But it does not question the propriety of requirements that medical professionals alert patients to laws that affect medical choices. To the contrary, *National Institute* cited with approval the portion of *Casey* holding that a state may require medical professionals to provide information that facilitates patients' choices directly linked to procedures that have been or may be performed. *Id*. at 2373.

The preliminary injunction is reversed, and the case is remanded with instructions to dismiss the suit with prejudice. The injunction is stayed until the issuance of our mandate.